THE STATE ex rel. A. L. SCHUHART v. JOHN ROSE et al., Plaintiffs in Error.

Division One, December 18, 1922.

1. **WRIT OF ERROR:** Return: Copy. A writ of error issued out of the Supreme Court is a summons, and must itself be returned within the time specified therein, and a copy of the return attached to a complete transcript of the record is not a sufficient return.

2. ———: Return of Copy: Motion to Dismiss: Later Return of Writ. Where the clerk attached to a complete transcript of the record a copy of the writ of error, but did not return the writ itself, and no effort was made at the return term to have the writ itself brought into court or a return made during that term or an *alias*

State ex rel. Schuhart v. Rose.

writ issued, and thereafter defendant in error filed a motion to dismiss on the ground that there had been no return, a return of the writ at a subsequent term is *functus officio* and too late, and no part of the transcript can be considered.

3. ———: Notice to Defendant in Error: How Served: By Mail: By Protest at Application. Since the statute (Sec. 1502, R. S. 1919) declares that "every person suing out a writ of error shall cause notice thereof in writing to be served on the adverse party, or his attorney of record, twenty days before the return day of such writ" and "if such notice be not served, the writ shall be dismissed, unless good cause for such failure be shown," a mailing of a prepared notice addressed to the attorneys of defendant in error, postage prepaid, with a letter inclosed requesting them to note on said notice the receipt thereof, etc., is not service and does not meet the plain requirement of the statute. Nor does the fact that the attorney for defendant in error was present when application for the writ was made and protested against its issuance and the size of the *supersedeas* bond, amount to service of notice that the writ has been sued out. The statute expressly requires that the notice shall be served, and the service must correspond with the original process by which suits are begun in courts of general jurisdiction.

4. ———: ———: Time of Service. Notice to defendant in error that a writ of error has been sued out must be served at least twenty days before the return day of the writ, and when the writ requires the writ to be returned on the first day of the next term notice that it has been sued out must be served twenty days before said first day, but the writ itself may be returned on any day during the continuance of that term; and if said notice has not been so served the case must be dismissed, unless good cause for failure to serve be shown.

## Writ of Error to Grundy Circuit Court.—*Hon. L. B. Woods,* Judge.

DISMISSED.

*J. D. Allen* for plaintiffs in error.

*D. F. Warren* and *Hall & Hall* for defendant in error.

BROWN, C.—This suit was instituted April 21, 1919, in the Circuit Court of Grundy County, upon an attachment bond given by the defendant John Rose as principal and Conrad Rose and Ben Rose as sureties in an attachment suit instituted by John Rose against this relator in said Grundy Circuit Court, November 4, 1914, wherein the amount claimed was $16,350. The amount of the bond sued on is $32,700, signed by the said John Rose as principal and Conrad Rose and Ben Rose as sureties. Conrad Rose died before the institution of this suit, leaving a will appointing John Rose as his executor. The will was contested, and pending the contest the defendant Wild was appointed administrator with the will annexed and is joined as defendant in that capacity. John Rose is sued personally, as well as in the capacity of executor under the will of Conrad Rose.

The attachment was dissolved by verdict and judgment for the defendants, which was affirmed by this court.

The attachment suit was founded upon a lease by John Rose, plaintiff therein, to one Rader, of a building in Trenton for a period of ten years for the purpose of a picture show. The lease had been transferred by Rader to Schuhart, who occupied the building for a time, and then abandoned its use and ceased to pay rent. The property attached included the moving picture machinery and all the furniture and fixtures of the theater, and was retained in the possession of the officer for three years and nine months, when the case was finally determined and the property returned in a practically useless condition.

The judgment appealed from was rendered November 6, 1919, and was for the penalty of the bond against all the defendants, to be satisfied by the payment of $16,524.23, damages assessed by the court for breach of the attachment bond.

An appeal was allowed from this judgment on November 13, 1919, but by reason of certain matters not

necessary to consider, it was afterward dismissed, and on February 20, 1920, a writ of error issued from this court returnable on the first day of the next April term. In obedience to this writ a complete transcript was, on July 14, 1920, filed in this court by the clerk of the Grundy Circuit Court, with what purported to be an uncertified copy of the writ attached.

One of the attorneys who represented the relator in the circuit court was present before Honorable R. F. Walker, Chief Justice of this court, at the time the application was made by defendant's counsel on February 19, 1921, and objected to the sufficiency of the *supersedeas* bond offered by the plaintiffs in error, and accepted by the Chief Justice notwithstanding such objection. A printed copy of the record proper and bill of exceptions was also filed by plaintiffs in error October 3, 1921.

The record shows that the defendant Wild filed an answer, stating that the defendant John Rose had failed and refused to turn over to him any of the property of Conrad Rose, deceased, and that he had nothing in his hands belonging to that estate. The other defendants did not answer. At the November term and on the third day of November, 1919, it being the first day of that term, the defendants filed a motion to dismiss, on the ground that the plaintiff, being a non-resident of the State, had not given security for cost as required by law. On the next day the court made an order that the plaintiff deposit $50 in lieu of cost bond, which was thereupon done, and the motion to dismiss was overruled by the court. On November 6th, it being the 4th day of the term, an interlocutory judgment for the penalty of the bond was entered against John Rose, and John Rose executor, and Ben Rose, and the cause being called for trial the court proceeded to hear the testimony offered by the relator and thereupon entered final judgment assessing damages as follows:

"That the relator, Schuhardt, as defendant in said attachment was and is, by said breach of said attach-

ment bond, injured and damaged as follows, to-wit: For injury, damage, and depreciation in value and usefulness of relator Schuhardt's property seized under the writ of attachment, the sum of $2391; for attorneys' fees paid by said relator, in defending said attachment, the sum of $1000; for printing briefs, and expenses of attorneys attending hearing in the Supreme Court, the sum of $81.28; for loss of time and money expended for expenses in preparation for and attending the trial of said attachment, the sum of $751.95; and for loss of the use of the property of relator, seized and held under said attachment, the sum of $12,300, making in all the total of $16,524.23, which the court doth find and adjudge to be the amount of the damages sustained by the relator by reason of said breach of said attachment bond.''

For this latter sum the judgment was rendered against John Rose in his personal capacity and as executor of the estate of Conrad Rose and against Ben Rose. It is this judgment against which the writ of error is directed.

The relator, on October 8, 1921, filed his motion to dismiss the writ of error on the grounds:

''1. Because there was no return made to said writ of error in the manner and within the time provided by law and required by the terms of said writ of error and the rules of this court.

''2. Because the plaintiffs in error, being the persons who sued out said writ of error, failed to cause notice thereof in writing to be served upon the above named defendant in error or his attorneys of record, twenty days before the return day of said writ, as required by law.''

The plaintiff in error filed his abstract of the record in this court on October 3, 1921, and the cause was set for hearing on the 15th day of October, 1921, it being the fifth day of the October term, when it was heard and submitted and the motion to dismiss the writ of error was submitted with the case.

The sheriff's return on the original summons did not mention the fact that John Rose was executor of the estate of Conrad Rose as set forth in the summons, and stated that he delivered a copy of the summons to said John Rose, the defendant Wild being the first served.

On September 24, 1919, in vacation, plaintiff filed an amended petition setting out special damages in more detail than in the original petition. On this a summons was issued for John Rose executor, alone, which was duly served and returned.

I. This motion presents the question preliminary to all others which can arise in the disposition of this case, for its answer involves the right of the court to **Return Copy.** hear and determine its merits. The writ is the process of this court by which the proceeding is instituted and if, at the time of its issue, it was void by the law of its existence, or if, being then valid, it afterward became *functus officio,* it can now perform no office in aid of our appellate jurisdiction and should be quashed. While the writ of error is a writ of right, and occupies an important place in a judicial system which proceeds upon inquiry and only condemns upon a full opportunity for hearing, the law carefully guards against its use for the obstruction of justice by interminable litigation. Its issue, by the terms of our code, is not only restricted, in ordinary cases, to the term of one year from the rendition of the judgment to be reviewed, but it must be promptly prosecuted upon notice to the party against whom it is directed.

The first step in the proceeding is the issue of the writ out of this court. It is a process of this court requiring a return thereof in obedience to its command. It is therefore reasonable to assume that it should be returned, like any other process, to the court from which it is issued bearing evidence of obedience to its commands. This is the view adopted by Mr. Pattison in his Forms for Missouri Pleading, which have been of

great assistance to the bar in this State in the preparation of such instruments. His form for return to the writ of error (p. 431) states: "I, . . . , in obedience to the mandate of the within writ, herewith transmit to the honorable Supreme Court of the State of Missouri . . . a full, true and complete transcript of the record and proceedings in the within entitled cause." While the clerk attached what seems to be an uncertified copy of the writ to the transcript transmitted to this court, the writ itself, which is the foundation of our jurisdiction, is absent from our records, which contain no evidence of its existence other than the uncertified copy attached, without comment, to the transcript.

That the original writ should be returned seems to be the settled doctrine of the United States Supreme Court under the Federal Judiciary Acts. In Villabolos v. United States, 6 How. l. c. 90, Chief Justice TANEY said: "Now the writ of error is always returnable to the term of the appellate court next following the date of the writ; and the citation required by the Act of 1789 (which is a summons to the opposite party to appear) must be returnable to the same term, and unless the writ and citation are both served before the term, the case is not removed to the appellate court, and the writ, if returned afterwards, will be quashed." In Castro v. United States, 3 Wall. l. c. 49, Chief Justice CHASE expressed the same simple and reasonable doctrine as follows: "It may now be regarded as settled, that in the cases where appeals are allowed by the Judiciary Act of 1789, and the additional Act of 1803, the writ of error, or the allowance of appeal, together with a copy of the record and the citation, when a citation is required, must be returned to the next term of this court after the writ is sued out or the appeal allowed; otherwise the writ of error, or the appeal, as the case may be, will become void, and the party desiring to invoke the appellate jurisdiction will be obliged to resort to a new writ or a new appeal." In Mussina v. Cavazos, 6 Wall.

State ex rel. Schuhart v. Rose.

l. c. 358, MILLER, J., said: "It is the general principle, that all writs, which have not been served, and under which nothing has been done, expire on the day to which they are made returnable. They no longer confer any authority; an attempt to act under them is a nullity, and new writs are necessary, if the party wishes to proceed. Hence we have the *alias* writ, and others in numerical succession indefinitely." In the case last cited the original writ of error had been destroyed before the return was made and the return was therefore made upon a copy and was held to be a compliance with the command of the writ. This decision was placed solely upon the ground stated, and there is nothing in the opinion of the court which indicates any doubt as to the proposition so clearly stated by Mr. Justice MILLER in his opinion that the writ itself, had it been in existence, would have been a necessary and indispensable part of the return. Its omission cannot be said to be an error of the clerk alone, for assuming the paper attached to the transcript to be a true copy its command is that the return shall be made "as the plaintiff in error shall direct," and the writ closes with the imperative command, "and have you then and there this writ." This court, in its direction, expressly required the return of the writ into the office of its clerk, and both the propriety and necessity is, of course, as apparent as the propriety and necessity of returning a writ of summons to the court that issued it. [See also Blair v. Miller, 4 Dall. 21.] The issue of the writ is the only act by which the court has assumed, or attempted to assume, jurisdiction over this judgment. It was dispatched upon its mission to obtain the transmission of the record to this court, and the words by which the plaintiff in error is given the right to direct the proceeding by which it is to be returned to this court by the clerk of the trial court, are plainly imprinted upon its face as is the command to the clerk to have it here with his return. The term to which it is returnable has passed, and, while we have

the transcript, we have nothing to show our jurisdiction. Had the writ been destroyed meanwhile, it could no doubt, by a prompt proceeding for that purpose, have been supplied by an order of this court, as was practically done in the case of Mussina v. Cavazos, supra, but the plaintiffs in error having failed to secure its return or to have it brought into court during the April term, 1920, to which it had been returnable, the October term of the same year, and the April term, 1921, had all expired, and the defendants in error had filed this motion to dismiss the writ which had already accomplished the purpose of carrying it over the return term. The procedure on the motion rapidly developed in the record until it overshadowed the merits of the case.

We are of the opinion that the writ of error became *functus officio* by the lapse of the April term, 1920, to which it was returnable.

II. The writ of error is a common law writ, adopted into our practice by the Act of 1816 as a rule of decision when not in conflict with or repugnant to the Constitution and laws of the United States or of this State. It was thus engrafted into our code, Notice to Defendant: How Served. and has become a criterion to be applied in the construction of our statutes. The common-law practice in which this writ had its origin required that it be accompanied by a citation issued out of the same court, requiring the defendant to appear at the time and place mentioned and answer to the matters charged in the writ. This method of notice has been changed by our statute, Section 1502, Revised Statutes 1919, which is as follows: "Every person suing out a writ of error shall cause notice thereof in writing to be served on the adverse party or his attorney of record, twenty days before the return day of such writ. If such notice be not served, the writ shall be dismissed, unless good cause for such failure be shown." The plaintiffs in error seem to recognize

that the failure to give the notice so required, unless
good cause for such failure be shown, would call for
the dismissal of the writ, by presenting the affidavit of
their attorney to the effect that he, on the 27th day
of April, 1920, prepared a notice that the writ of error
had been issued and mailed in the United States post-
office at Chillicothe, postage prepaid, addressed to the
attorneys of the defendant in error at Trenton, Missouri,
with a letter enclosed requesting them to note on said
notice the receipt thereof, and to send it to the clerk
of this court to be filed with the transcript. This was
met by an affidavit that the letter had not been received.

The statute which we have quoted requires that
this notice should be *served*. No sort of constructive
service is prescribed, and we do not understand that the
plaintiff in error contends that the method adopted
meets the statutory requirement. It is, however, con-
tended that one of the attorneys for defendant in error
was notified that the application for the writ would be
presented to this court February 19, 1920, and was pres-
ent on that date and objected, not only to the issuance
of the writ, but also to the sufficiency of the *supersedeas*
bond offered, and that this waived or dispensed with the
statutory notice of the issue of the writ on the next
day. Their theory seems to be that the object of the
statutory notice is to secure the presence of the de-
fendant in error at the time of the application for the
writ, so that it has performed its work if he is ac-
tually present before the court or judge to whom the
application is made at the time of its presentation.

There is nothing in the phraseology of this pro-
vision which indicates any such purpose. The writ is
of right and goes as a matter of course. Its return day
is fixed by the court which issued it, and the law is so
written as to require twenty days' notice at least of
its return into the appellate court. In this respect it
corresponds with the original process by which suits are
begun in the courts of general jurisdiction. The plain-

tiff first goes before the clerk and makes application for his writ, which goes as a matter of right, notwithstanding any objection the defendant might make were he present, but no such objection, however strenuous, would operate as an entry of his appearance to the suit. The object of this provision of the statute is apparent. In case of appeals the defendant is already in court. Should judgment go against him he knows that he must appeal during the term. Should he be successful the same rule applies against his adversary, and when the term has elapsed his judgment is final, and he may depart the court in perfect confidence that nothing further can be done in that case without notice to him. He knows that no appellate proceeding can be taken without due notice, and the consequent right to contest it. All such proceedings must be original in their nature to the extent that they involve the right to a hearing upon due notice. The notice served in this case by hanging a letter to the door knob of the lawyer who had represented him in his suit, and, perhaps, had been paid off and discharged, cannot take the place of the notice required by statute for the purpose of giving him an opportunity to enter upon a new contest.

We believe that Section 1502, Revised Statutes 1919, requiring that one suing out a writ of error shall cause notice thereof to be served upon the adverse party or his attorney of record at least twenty days before the return day thereof, must be construed in accordance with the plain and obvious meaning of its words. It has no reference to notice of the application for the writ. While notice of the application for such writ may be given at any time or not at all, the statutory notice cannot be given until its words become the expression of an accomplished fact. Even the time of service cannot be ascertained until the return day has been fixed by its issue, and the word "served" includes the doing of an act which may, in form and substance, be made a record of this court by which it may ascertain its own

jurisdiction for purposes of the motion to dismiss, authorized in the last clause of the section. We are also of the opinion that to hold that the affidavit that a notice of the suing out of this writ of error was prepared by the attorneys for plaintiffs in error, and mailed to the attorneys for defendants in error with the request that they note the receipt of said notice thereon and send it to the clerk of the Supreme Court at Jefferson City, Missouri, to be filed with the transcript in said cause, constitutes proof of service such as the statute contemplates, would open up a source of temptation and uncertainty in legal proceedings which would have no good effect upon the administration of justice. The fact of the appearance in the record of a counter affidavit stating that no such letter was received, and a further fact which we will presently notice, make it unnecessary to speak more particularly upon this question.

III. We do not think that the notice we have referred to in the last preceding paragraph, had it been served and proof of service preserved in the record, would have been within the time required by Section 1502. The statute contemplates that the length of the notice should be susceptible of ascertainment at the time it is prepared and served. This, according to the affidavit of Mr. Allen, was on April 27, 1920. While we are of the opinion that this writ might have been returned at any time during the April term, and, for that purpose, did not become *functus officio* until the adjournment of that term, it was *returnable* upon its face on the 11th day of April, 1920. Its words are: "We . . . in that behalf COMMAND YOU, that you send to us certified under your seal a perfect transcript of the record and proceedings in the cause aforesaid showing the term and day of the term, month and year upon which the same shall have been rendered, as the plaintiff in error shall direct, as fully as the same remain of record before you

*Timely Service of Notice.*

in said court so that we may have them before us at our Supreme Court, to be begun and held at the City of Jefferson, in the County of Cole, in said State on the Second Tuesday in April next, so that our Judges of our Supreme Court, on inspecting the record and proceedings aforesaid, may cause to be further done therein, for correcting the error, what of right and according to law ought to be done, and have you then and there this writ.''

Although this writ might, in our opinion, have been returned at any time before the expiration of the April term, 1920, of this court, it would be entirely inoperative as fixing the return day for the purpose of notice. At the time of its issue this court was in the midst of the October term, 1919. No period was fixed by law for the continuance of the term, and it is not in accord with the terms of the statute to say that it authorized this notice to be given at any time within twenty days before the succeeding October term. The only return *day* fixed by the writ was the second Tuesday in April, 1920, and this court has uniformly held in similar cases that if the notice is not served upon the defendant in error twenty days previous to that date the writ should be dismissed. [Garth v. Motter, 248 Mo. 477; Kenner v. Doe Run Lead Co., 141 Mo. 248; Guy v. Mayes, 141 Mo. 441; Biles, Edwards & Co. v. Beadle, 93 Mo. 628.] The Edwards Case supra is strikingly similar to this. No good reason has been shown in this case for failure of the defendants to give notice in writing that they had sued out a writ of error, and in such case the plaintiff is entitled to the remedy prescribed by Section 1502, Revised Statutes 1919, which imposes the duty.

It follows from what we have said in the preceding paragraphs that the plaintiffs in error have failed in the respects we have mentioned to prosecute their writ of error in time and manner provided by law in such cases, and having shown no good reason for such failure it becomes our duty to dismiss the writ.

It is so ordered. *Ragland* and *Small, CC.,* concur.

PER CURIAM:—The foregoing opinion of BROWN, C., is hereby adopted as the opinion of the court. All of the judges concur.